FILED

2014 FEB 12  PM 4: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Evan J. Smith, Esquire (SBN 242352)
BRODSKY & SMITH, LLC
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone:  (877) 534-2590
Facsimile:   (310) 247-0160

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

EUGENE A. DeBONS, on behalf
of himself and all others similarly
situated,

                         Plaintiff,

              vs.

GLOBUS MEDICAL, INC.,

                         Defendant.

Case No. 2:13-cv-08518-SVW- FFMx

SECOND AMENDED CLASS
ACTION COMPLAINT FOR:

(1)  VIOLATION OF UCL, BUS. &
       PROF. CODE § 17200, *et seq.*

(2)  VIOLATION OF CAL. CIV. CODE
       §1750, *et seq.*

(3)  NEGILINCE - SALES

(4)  NEGLIGENCE – FAILURE TO
       WARN

(5)  NEGLIGENCE *PER SE*

(6)  BREACH OF CONTRACT

(7)  BREACH OF IMPLIED CONTRACT

(8)  BREACH OF IMPLIED
       WARRANTY

(9)  FRAUDULENT CONCEALMENT

Plaintiff, Eugene A. DeBons, by and through his attorneys, on behalf of himself and those similarly situated files this Second Amended Class Action Complaint against defendant Globus Medical, Inc. (hereinafter referred to as "Globus" the "Company" or "Defendant") and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows.

1.     Plaintiff brings this class action on behalf of himself and all other persons in the state of California that purchased and was implanted with an unapproved medical device sold by Defendant.  As a result of Defendant's wrongful actions, consumers in California purchased NuBone™ ("NuBone™"), an osteoinductive bone graft that was marketed, sold and distributed by Defendant without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act.

2.     Plaintiff seeks monetary damages to reimburse all persons in the state of California that purchased and were implanted with NuBone™ that was marketed, sold and/or distributed by Defendant (the "Class"), restitution in the form of removal of the product from Class members, punitive damages, as well as injunctive relief in the form of disclosure to class members as to why Defendant removed NuBone™ from the market and why Defendant stopped selling NuBone™.

## THE PARTIES

3.     Plaintiff Eugene A. DeBons is a citizen of the state of Arizona, residing at 1807 E. Catamaran Drive, Gilbert, AZ 85234 in Maricopa County. Plaintiff purchased and was implanted with NuBone™ on March 18, 2009 in the state of California.

4.     Founded in 2003, defendant Globus is a spinal implant manufacturer incorporated in the state of Delaware and principally located at 2560 General Armstead Avenue, Audobon, Pennsylvania 19403.  The Company maintains and

1   agent for service of process in the state of California at Corporation Service

2   Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.  The

3   Company focuses on the design, development, and commercialization of products

4   for patients with spine disorders.  Globus stock is traded publicly on the NYSE

5   under the symbol "GMED."  According to the Company's February 27, 2013 full

6   year and Q4 financial and operating results press release, Globus generated $386.0

7   million in worldwide sales during 2012 following the Company's August 3, 2012

8   initial public offering.

9   **JURISDICTION AND VENUE**

10       5.    This Court has jurisdiction over this action pursuant to 28 U.S.C.

11  §1332(a)(2), because complete diversity exists between the Plaintiff and

12  Defendant, and the amount in controversy exceeds $75,000.00.  This action is not a

13  collusive action designed to confer jurisdiction on a court of the United States that

14  it would not otherwise have.

15       6.    This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(d) and

16  the Class Action Fairness Act.

17       7.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391

18  because Defendant is found and/or does substantial business here, and a substantial

19  part of the events that are the subject of this action took place in this venue

20  including but not limited to the sale and implantation of NuBone™ to the Class.

21   **FDA APPROVAL PROCESS**

22       8.    In general, firms must submit premarket information to the FDA for

23  the purpose of obtaining market approval or clearance of their devices prior to

24  commercial distribution.  A premarket approval application (PMA) is required for

25  entirely new devices while a premarket notification submission 510(k) may be

26  submitted to demonstrate that a device is "substantially equivalent" to a legally

27  marketed device that did not require a PMA.  Until the submitter receives an Order

28

from the FDA on its 510(k) submission, the submitter may not proceed to market the device.

9.     As this Court has acknowledged, the FDA established a "rigorous process" of premarket approval for new Class III devices, such as the subject device in this case.  *Houston v. Medtronic, Inc.*, 2013 WL 3927839 (C.D.Cal.) (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008)).

10.     To obtain a PMA, a manufacturer must submit detailed studies and investigations of the device's safety and effectiveness, and a full description of the device's components and how it may be used.  *Id.* citing *Riegel*, 552 U.S. at 318, 128 S.Ct. 999.

11.  The FDA spends an average of 1,200 hours reviewing each application, and grants premarket approval only if it finds there is a "reasonable assurance" of the device's "safety and effectiveness."  21 U.S.C. § 360e(d).  The agency must "weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use."  21 U.S.C. § 360c(a)(2)(C).  It may thus approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives.  *Id.*

12.     The premarket approval process includes review of the device's proposed labeling.  The FDA evaluates safety and effectiveness under the conditions of use set forth on the label, 21 U.S.C. § 360c(a)(2)(B), and must determine that the proposed labeling is neither false nor misleading, 21 U.S.C. § 360e(d)(1)(A).  *Id.*

13.     After completing its review, the FDA may grant or deny premarket approval.  *Id.*; 21 U.S.C. § 360e(d).

14.     If the FDA agrees that a device for which a 510(k) premarket notification submission has been submitted is substantially equivalent to a legally marketed device, the FDA issues a Substantially Equivalent (SE) letter.  A "Not

Substantially Equivalent Letter" (NSE) is issued when the FDA determines that the device is not substantially equivalent to the already legally marketed device.  Upon receipt of an NSE letter, the subject device may not be legally marketed.

## SUBSTANTIVE ALLEGATIONS

15.     Globus entered the biomaterial segment during the second quarter of 2007 with the introduction of the NuBone™ Osteoinductive Bone Graft product line.  Globus alleged NuBone™ to be a 100% allograft tissue product, composed of an osteoinductive demineralized bone matrix (DBM) combined with a unique cortical bone gelatin carrier.  The first two products to be released in the line were the NuBone DBM Putty and NuBone DBM Gel which were developed for use in spinal fusion, trauma, and reconstructive bone grafting procedures.  According to the Company's May 11, 2007, press release:

> Since NuBone™ is derived entirely from cortical bone, it maintains a high level of osteoinductivity by avoiding the use of synthetic carriers that may negatively affect the long-term biological activity of DBM Globus has developed a composition completely free of chemical additives and synthetics, an aseptic manufacturing process to maximize osteoinductivity, and outstanding handling characteristics to facilitate usage by surgeons.

> NuBone™ marks Globus Medical's first foray into the Biomaterials segment. The Company plans several new biomaterials initiatives over the next 12 to 18 months. The Biomaterials Group at Globus has grown rapidly since its formation in July of 2005, and now includes a 14-member staff, onsite labs for biomaterials research and quality control testing, and extensive in-house manufacturing capabilities.

> Our entry into the Biomaterials segment is a further demonstration of the power of the Globus product development engine. From a standing start less than two years ago, our Biomaterials Group has made significant progress on several innovative Biomaterials products, of which NuBone™ is only the first. Our Biomaterials Group is a key component in our strategy to innovate over a complete suite of products covering Fusion, MIS, Motion Preservation and Biomaterials.

16.     Despite acknowledging in the May 11, 2007 press release that NuBone™ is an "innovative biomaterial product," Globus did not file a PMA with the FDA, nor submit a premarket notification 510(k) prior to selling the product to consumers.  In March 2008, the FDA's Tissue Reference Group notified Globus that the Company must seek 510(k) clearance for NuBone™ if Globus claimed the product to be substantially equivalent to another legally marketed device.

17.     Finally, in January 2009, Globus submitted a premarket notification 510(k) to the FDA.  Upon receipt of the NuBone™ 510(k) submission the FDA declined to clear the product after determining that it was not substantially equivalent to other legally marketed products.  In December 2009, the FDA sent an NSE letter to the Company, whereby the FDA demanded that Globus stop selling/distributing the product.

18.     However, Globus ignored the NSE letter and continued to illegally sell and distribute NuBone™.  Not until an inspection of Globus in September 2010 did FDA investigators learn of Globus' continued illegal conduct.

19.     Sometime in or after September 2010, Globus finally discontinued its illegal sale of NuBone™.

20.     The FDA filed a complaint for civil money penalties against Globus and the Company's CEO David C. Paul ("Paul") for distributing NuBone™ without proper FDA approval or clearance.  The agency informed Globus and Paul of this action in November 2011.  "This company ignored previous warnings by the FDA and continued to produce and distribute unapproved medical devices," said Dara A. Corrigan, associate commissioner for regulatory affairs.  "By taking this enforcement action, the FDA is demonstrating its commitment to protecting the public from the dangers of unapproved devices."

21.     On February 28, 2012, the FDA reached a $1,000,000.00 civil money penalty settlement with Globus for the distribution of unapproved medical devices, the NuBone™ product line.  The settlement required Globus to pay a $550,000.00

penalty and Paul to pay a $450,000.00 penalty.  "The device-clearance process assures the quality and safety of devices before they reach the market.  Firms can't simply choose to sell devices that FDA has found are not safe and effective," said Steve Silverman, director of the Office of Compliance in the FDA's Center for Devices and Radiological Health.  "We took action against Globus Medical to protect patients […]"

22.   Despite the civil penalties paid to the FDA, Globus has not reimbursed or compensated patients that were implanted with an illegally sold, non-FDA approved medical product.

***Terms of sale of NuBone™***

23.   Defendant, as the sole manufacturer, distributor, and supplier, sold and distributed the NuBone™ product line to hospitals in the State of California including Hoag Memorial Hospital Presbyterian located at 1 Hoag Drive, Newport Beach CA 92663 ("Hoag Memorial").

24.   Hospitals, including Hoag Memorial, maintained stocks of NuBone™ for use in patients' surgeries.  *See* Lott Decl. ISO Removal [Docket #4].  Along with NuBone™, Defendant provided hospitals with Delivered Order Forms ("DOs").  *Id.*

25.   DOs were to be completed and returned to Globus for each surgery or case in which NuBone™ was used.  *Id.*  A completed DO contained various identifying information about the product and the surgery in which the product was used, including but not limited too, the account name and number, the date and type of surgery, and the specific product used in that surgery.  *Id.*

26.   The DOs were used by Defendant to form the basis for a purchase order with a hospital.  *Id.*  Defendant received completed DOs from a hospital and then invoiced the hospital for the used NuBone™.  *Id.*

27.   In accordance with its agreement, Defendant received a completed DO from Hoag Memorial for the NuBone™ used in Plaintiff's spinal surgery.

28.     Based upon the receipt of the completed DO advising Globus of Plaintiff's identifying information including the product that was used in his surgery, the account name and number and the date and type of surgery, Defendant sent an invoice to Hoag Memorial for the specific NuBone™ product used in Plaintiff's March 18, 2009 surgery.

29.     While the exact dollar amount that Globus charged hospitals for NuBone™ in general and for Plaintiff's surgery is not known to Plaintiff, on or about March 18, 2009 Hoag Memorial charged Plaintiff $8,433.85 for three 10cc units of NuBone™.[1] *See* Nichols Decl. ISO Removal [Docket #4]**.**

30.     Defendant has indicated, based upon their records that 545 patients were charged approximately $4,578,000 to $4,796,000 for NuBone™.   *See* Lott Decl. ISO Removal [Docket #4].

***Defendant fails to inform of NuBone's non-FDA approved, illegal status.***

31.     On the packaging of NuBone™ that Globus sent to hospitals, including Hoag Memorial, was a label.  The label for the NuBone™ that was implanted into Plaintiff included the following identifying information "NuBone DM Putty, 10cc, Lot GBK040AC, reference number 840.010, 2011-02, Globus customer service number 1-888-456-2871, S/N:038, and GMM840010 3 RevC."

32.     The NuBone™ label did not indicate or advise that the product was not FDA approved.

33.     Defendant did not advise Hoag Memorial or any other hospital on its packaging, label, DOs or invoices that NuBone™ had not been FDA approved.

34.     On March 18, 2009, at Hoag Memorial, Plaintiff was implanted with NuBone DBM Putty that was manufactured, distributed and sold by Globus.  The

---

[1] Plaintiff has not attached the contract between Globus and Hoag for the sale of NuBone™ to the complaint because he does not have a copy thereof.  Upon information and belief, the contract is in the possession of Globus and will be obtained once the Court allows for discovery.

1  total cost of Plaintiff's March 18, 2009 surgery in which he was implanted with

2  NuBone™ was approximately $176,000.00.

3      35.    Prior to his surgery, Plaintiff was advised of the risks of the surgical

4  procedure and provided his consent for the surgery.  Plaintiff was never advised

5  that NuBone™ was an illegal, non-FDA approved product because this

6  information was kept from him, from Plaintiff's doctors and from the hospital.

7  Had Plaintiff been so advised, Plaintiff would not have given his consent for the

8  surgery.

9      36.    In addition, prior to Plaintiff's surgery in which he was implanted

10  with NuBone™, and prior to opening the NuBone™ packaging, Plaintiff's doctors

11  reviewed the label on the NuBone™ package referenced above and placed the

12  sticker label on Plaintiff's surgical chart as both a safety precaution and to

13  evidence the product being used.  Because the label did not advise that NuBone™

14  was not FDA approved, Plaintiff's doctors did not know and could not advise

15  Plaintiff of the non-FDA approved status of NuBone™.

16  ***Defendant's omissions and active concealment***

17      37.    At all times material and relevant hereto, Plaintiff believed the

18  NuBone DBM Putty that he was implanted with was FDA approved.

19      38.    Defendant intentionally omitted and actively concealed that which it

20  was obligated to inform patients, doctors and hospitals, namely that NuBone™ was

21  an illegally sold non-FDA approved medical product.

22      39.    Defendant was obligated to, but failed to inform Plaintiff, Hoag

23  Memorial, patients, doctors and hospital, that NuBone™ was not FDA approved.

24      40.    Defendant was obligated to inform patients, including Plaintiff, that

25  NuBone™ was not FDA approved because as a medical product manufacturer,

26  seller and distributor, a fiduciary relationship exists between Globus and the

27  patients and hospitals that the Company has sold its products too in California.

28  Globus had specific knowledge that its non-FDA approved medical product was

being implanted into patients.  Globus had this specific information as a result of its contracts, DOs, invoices and purchase orders with hospitals including Hoag Memorial.

41.   Defendant was obligated to inform Plaintiff, Hoag Memorial, patients, doctors and hospitals that NuBone™ was not FDA approved because Globus had exclusive knowledge of this information, specifically that NuBone™ was not FDA approved or substantially similar to an already approved FDA product.  The illegal non-FDA approved status of NuBone™ was not known to Plaintiff, Hoag Memorial, patients, doctors and hospitals.

42.   Defendant actively concealed the non-approved status of the NuBone™, material information that the Company was obligated to disclose and inform Plaintiff, Hoag Memorial, patients, doctors and hospitals of.  Globus actively concealed the non-FDA approved status of NuBone™ by continuing to sell NuBone™ while concealing and not advising Plaintiff, patients, doctors, hospitals and Hoag Memorial that (1) NuBone™ was not FDA approved (2) that the FDA Tissue Reference Group had made and notified Defendant of its determination in March 2008 that NuBone™ required 510(k) clearance that it did not have, (3) Defendant had waited until January 2009 to make a premarket notification submission 510(k), (4) the FDA had notified Defendant that it had denied Globus' premarket submission 510(k), (5) Defendant had received a December 2009 letter from the FDA demanding Globus immediately stop distributing NuBone™, and (6) a September 2010 inspection of Globus by FDA investigators had revealed that the Company continued to market, sell and distribute NuBone™, even after receiving the NSE letter in December 2009.

SECOND AMENDED COMPLAINT

*Defendant's partial representations*

43.     Defendant had an obligation to notify Plaintiff, patients, doctors, hospitals and Hoag Memorial of the non-approved status of NuBone™ as a result of the Company's partial representations regarding NuBone™.  As stated more fully above, Defendant not only illegally sold NuBone™ to hospitals, but the Company made partial representations about the product when it supplied various information to hospitals along with the product including representations that were made via press releases, contracts, DOs, purchase orders, invoices and product packaging that included labels.  These representations included, *inter alia*, the medicinal amount of NuBone™, the cost of NuBone™, the use of NuBone™, the benefits of NuBone™, the uses of NuBone™, the procedures NuBone™ could be used in, and the product's status as new and innovative.  As a result of these representations, Defendant obligated itself to also inform Plaintiff, patients, doctors, hospitals and Hoag Memorial that NuBone™ was not FDA approved.

44.     By omitting and failing to inform doctors and hospitals of the non-approved FDA status of NuBone™, Globus prevented doctors and hospitals from notifying patients, including Plaintiff, and obtaining from them their informed consent for surgery.  Globus did so because the Company was aware that no person would allow NuBone™ to be implanted into their bodies, and because no hospital or doctor would purchase, use, or preform spinal surgery with NuBone™ if they were aware of the product's non-FDA approved status.

45.     Plaintiff's doctors and Hoag Memorial relied upon Globus' NuBone™ packaging, labels, DOs, contracts, press releases and invoices to inform and advise Plaintiff of the risks associated with NuBone™.   Plaintiff's doctors specifically reviewed the NuBone™ label and removed and placed it on Plaintiff's surgical chart as a safety precaution.

SECOND AMENDED COMPLAINT

46.     As result of failing to place the non-approved status, among other things, the NuBone™ label, Defendant prevented Plaintiff from learning prior to his surgery that NuBone™ was not FDA approved.

47.     Defendant owed a duty to disclose safety issues or concerns.  The fact that NuBone™, a non-FDA approved product, was being implanted into patients during spinal surgery is clearly a safety issue and concern for Plaintiff, patients, doctors and hospitals.

48.     NuBone™ was defective because it was not FDA approved.  Medical devices cannot be sold if the FDA has not found them to be safe and effective.  The device-clearance process assures the quality and safety of devices before they reach the market.  By illegally selling NuBone™, Globus has created a safety hazard to the 545 people that were illegally implanted with the product in the State of California.

49.     Defendant was aware that NuBone™ was not FDA approved and the existence of this safety concern at the time of its NuBone™ sales.  As stated more fully above, the FDA has said that Globus ignored its warnings and continued to illegally manufacture and distribute NuBone™ in contradiction of FDA directives.

50.     Globus acknowledged its illegal activity and paid a fine of for its illegal sales of NuBone™.  As a result, Globus had knowledge that NuBone™ was not FDA approved at the time it was sold.

***Damage caused by illegal sales of NuBone*™**

51.     As a result of having non-FDA approved products implanted into their spines, Plaintiff and the Class have suffered damage.

52.     FDA approval of a medical device or product assures patients that the product is safe and effective.  21 U.S.C. § 360e(d).  Without FDA approval, a patient has no way to know if a product will help them, or worse, if it will cause them harm in the future.

53.    Defendant has allowed its non-FDA approved NuBone™ to be implanted in 545 unsuspecting patients in the State of California.  Lott Decl. ISO Removal [Docket #4].  These individuals still have the product inside of their bodies.  As the product was never FDA approved, these patients have no way of knowing if NuBone™ will continue to be effective or cause them future injury.

54.    Plaintiff seeks injunctive relief in the form of a disclosure that explains why Globus has never sought FDA approval of NuBone™.  Without this information, Plaintiff is left to guess what is wrong with NuBone™, whether he needs ongoing medical monitoring, whether the product will malfunction in the future and/or cause harm or disease to him.  This has left Plaintiff, and other Class members, with legitimate worries and anxiety.

55.    Plaintiff seeks restitution.  Plaintiff specifically seeks the removal of the product from his body.  To remove NuBone™ from his person, Plaintiff will have to undergo surgery.  While the exact costs of surgery is not yet known and will require expert testimony, Plaintiff estimates that this surgery will cost him thousands of dollars.

56.    Based upon the Diagnosis Related Group codes, as classified by the federal Centers for Medicare and Medicade Services, for the spinal fusion surgeries NuBone™ was intended to be used, the unadjusted (i.e., the base rate not applying wage and other outlier factors, which may increase the rate of reimbursement) Medicare reimbursement rates for these procedures utilizing NuBone™ ranges from $13,025 to $68,118 per procedure.  Lott Decl. ISO Removal [Docket #4].  Plaintiff estimates that the cost of his surgery to remove NuBone™ from his spine will be at least the amount of the Medicare reimbursement rate.

57.    The cost of Plaintiff's NuBone™ removal surgery is an economic damage that Plaintiff will have to pay as a result of Defendant's omission, active concealment and/or partial representations regarding NuBone™.

- 13 -
SECOND AMENDED COMPLAINT

58.     In addition, Plaintiff and members of the Class seek reimbursement for the NuBone™ that was illegally sold to them.  Plaintiff seeks reimbursement of the $8,433.85 that he paid for three 10cc units of NuBone™ and the remaining members of the Class seek reimbursement of the approximate $4,578,000.00 to $4,796,000.00.  *Id.*

59.     In addition, Plaintiff and the other 545 patients that were illegally implanted with NuBone™ are also entitled to money damages pursuant to the CLRA.  Indeed, the statute allows for a recovery if a plaintiff has suffered ***any*** damage.  *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157, 104 Cal.Rptr.3d 329, 338.  The damage suffered by the plaintiff need not be monetary.  *Id*.  That is why the CLRA provides for a recovery of minimum statutory damages of not less than $1,000.00.  *Colgan v. Leatherman Tool Group, Inc*., 135 Cal.App.4th 663, 38 Cal.Rptr.3d 36; Cal. Civ. Code § 1780, subd. (a)(1).

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of a class (the "Class") of all individuals that purchased and were implanted with NuBone™ in the State of California that was marketed, sold and/or distributed by Globus (the Class).  Excluded from the class is Defendant, the officers and directors of the Company at all relevant times, members of their immediate families, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Defendant has stated in its removal papers [Doc #1, p. 6, ln 6] that there are at least 545 individuals in the State of California that were implanted with NuBone™.  Based upon this admission, Defendant's sales information of NuBone™ and other information Defendant has in its exclusive possession, the Class is believed to

- 14 -

SECOND AMENDED COMPLAINT

consist of hundreds of class members.  The members of the Class are so numerous that joinder of all members is impracticable

62.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injuries arising out of the Defendant's conduct as complained of herein.  Plaintiff, like all other members of the Class, claim that the Defendant has violated state law, including *inter alia*, violating California's Unfair Competition Law, California Business Code §17200 *et seq.* and California's Consumer Legal Remedies Act §1750 *et seq.,* by illegally marketing, selling and distributing NuBone™ to them in violation of the Federal Food, Drug, and Cosmetic Act.

63.     Plaintiff's claims rooted in negligence, breach of contract and implied warranty, and fraudulent concealment are also typical of all Class members.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     Whether Globus has engaged in unfair and illegal practices;

        (b)     Whether Globus has engaged in deceptive and illegal practices;

        (c)     Whether Globus has engaged in fraudulent and illegal practices;

        (d)     The extent to which members of the Class have been injured as a result of these practices;

        (e)     Whether these practices render Globus in violation of California's Unfair Competition Law, California Business Code Section 17200 *et seq.*; and California's Consumer Legal Remedies Act Section 1750 *et seq.*;

        (f)     Whether Defendant has breached an implied contract with Plaintiff and Class members by selling NuBone™ without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act;

- 15 -

(g)   Whether Defendant has breached an implied warranty of merchantability with Plaintiff and Class members by selling NuBone™ without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act;

(h)   Whether Plaintiff is an intended third party beneficiary of the contract between Hoag Memorial and Globus to purchase NuBone;

(i)   Whether Defendant has breached a contract with Plaintiff and Class members by selling NuBone™ without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act;

(j)   Whether Defendant was negligent for its illegal sales of NuBone™;

(k)   Whether Defendant was negligent for failing to warn or the illegal, non-FDA approved status of NuBone™ at the time it was sold;

(l)   Whether Defendant was negligent per se with respect to its NuBone™ sales; and

(m)   Whether Defendant fraudulently concealed the unapproved, illegal status of NuBone™.

65.   Plaintiff will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation.  Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

66.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all members is impracticable.  Furthermore, the expense and burden of individual litigation make

it impossible for members of the Class individually to redress the wrongs done to them.

67.     There will be no difficulty in the management of this action as a class action.  Moreover, judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would be otherwise placed upon the judicial system by the filing of hundreds of similar suits by individuals who have been implanted with NuBone™ across the California. There are no obstacles to effective and efficient management of the lawsuit as a class action.

**COUNT I**

**<u>(Violation of UCL, Bus. & Prof. Code § 17200, <em>et seq.</em>)</u>**

68.     Plaintiff re-alleges and incorporates by reference the above allegations set forth in the Complaint as if fully set forth herein.

69.     This claim arises under the Unfair Competition Law and is brought on behalf of Plaintiff and the Class against Globus.

70.     The Unfair Competition Law, codified at Bus. & Prof. Code § 17200 et seq., makes it unlawful for a business to engage in a "business act or practice" that is "unfair" or "unlawful" or "fraudulent."

71.     An "unlawful" business activity includes "anything that can properly be called a business practice and that is at the same time forbidden by law." *Barquis v. Merchants Collection Assn.*, 7 Cal. 3rd 94, 111 (1972).  Prohibited "unlawful" practices are any practices forbidden by law whether civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  *Farmers Ins. Exchange v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

72.     An act is "unfair" under the UCL if it significantly threatens or harms competition, even if it is not specifically proscribed by another law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 186-87 (1999).

SECOND AMENDED COMPLAINT

73.     A business practice is "fraudulent" within the meaning of § 17200 *et seq.* if members of the public are likely to be deceived by the business practice. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254 (1992); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3rd 197 (1983).

74.     The UCL authorizes injunctive relief to prevent unlawful, unfair, or fraudulent business acts or practices, and restitution of money or property wrongfully obtained by means of such unfair competition.  Bus. & Prof. Code § 17203.

75.     At all times relevant hereto, Defendant has engaged in unlawful, unfair, and fraudulent business practices by illegally selling NuBone™ and not advising of its non-FDA approved status.

76.     Based upon Defendant's violation of the UCL, Plaintiff and the Class are entitled to relief in the form of restitution (i.e. removal of NuBone™ from each Class member) and injunctive relief.

## COUNT II

## (Consumers Legal Remedies Act, California Civil Code §1750, *et seq.*)

77.     Plaintiff re-alleges and incorporates by reference the above allegations set forth in the Complaint as if fully set forth herein. This claim arises under the CLRA and is brought on behalf of Plaintiff and the Class against Defendant.

78.     "Unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or service to any consumer are unlawful." Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

79.     The NuBone™ products at issue are "goods" as defined by CLRA § 1761(a).

80.     Globus is a "person" as defined by CLRA § 1761(c).

81.     Plaintiff and the Class are "consumers" as defined by CLRA § 1761(d).

SECOND AMENDED COMPLAINT

82.     The purchase of NuBone™ by Plaintiff and Class members are "transactions" as defined by CLRA § 1761(e).

83.     The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods. . .have. . .approval, characteristics, uses, benefits. . . which they do not have, (7) Representing that goods. . . are of a particular standard, quality or grade. . . if they are of another, (9) Advertising goods. . . with intent not to sell them as advertised. Civ. Code § 1770(a)(5), (7) and (9).

84.     Defendant has violated the CLRA by illegally selling NuBone™ and omitting, actively concealing and/or providing partial representations.

85.     In accordance with the requirements of Civ. Code § 1782(a), Plaintiff provided Defendant with written notice on or before April 22, 2013, via certified mail, of the allegations within this Count.

86.     Defendant has failed to adequately respond to Plaintiff's demand to refund the monies it received and pay for the costs associated with the removal of NuBone™ from those patients that wish to have the unapproved product removed, within 30 days after receipt of the Civil Code § 1782 notice.

87.     Plaintiff and the Class are entitled to relief in the form of actual damages, punitive damages, attorneys' fees and costs.

## COUNT III

### (Negligence – Illegal Sale of non-FDA Approved Product)

88.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

89.     An action that assert a claim of negligence must allege (1) the defendant's legal duty of care owed towards the plaintiff, (2) the defendant's breach of that duty, (3) the injury to the plaintiff as a proximate result of the

breach, and (4) damage to plaintiff. *Jones v. Grewe*, (1987) 189 Cal.App.3d 950,954 234 Cal.Rptr. 717.

90.    Defendant, as a manufacturer of a medical device, owes a duty of reasonable care to consumers of such device, even in the absence of an FDA regulation establishing such a duty.

91.    Defendant, as a manufacturer of NuBone™, owed Plaintiff a duty of care not to sell a non-FDA approved medical product that had not been found to be either safe or effective.

92.    Defendant breached this duty of care by selling and allowing to be implanted into Plaintiff the non-FDA approved product NuBone™.

93.    The proximate result of Defendant's breach of its duty is that Plaintiff became implanted with NuBone™.

94.    As a result, the Plaintiff has suffered damages.

## COUNT IV

### (Negligence – Failure to Warn)

95.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

96.    An action that asserts a claim of negligence must allege (1) the defendant's legal duty of care owed towards the plaintiff, (2) the defendant's breach of that duty, (3) the injury to the plaintiff as a proximate result of the breach, and (4) damage to plaintiff. *Jones v. Grewe*, (1987) 189 Cal.App.3d 950,954 234 Cal.Rptr. 717.

97.    Defendant, as a manufacturer of a medical device, owes a duty of reasonable care to consumers of such a device, even in the absence of an FDA regulation establisheing such a duty.

98.    Defendant, as a manufacturer of NuBone™, owed Plaintiff, doctors, patients, hospitals and Hoag Memorial, a duty to warn of the non-FDA approved

status of NuBone™ because medical products that have not been approved by the FDA have not been deemed safe or effective.

99.    Defendant breached this duty to warn by selling and allowing to be implanted into Plaintiff the non-FDA approved product NuBone™.

100.    Defendant breached this duty to warn by selling NuBone™ without notifying via press release, language on the packaging and/or labels of the product, DOs, invoices, and/or purchase orders the fact that NuBone™ was not FDA approved.

101.    The proximate result of the Defendant's breach of its duty is that Plaintiff became implanted with NuBone™ without his informed consent.

102.    As a result, the Plaintiff has suffered damages.

### COUNT V

### (Negligence *Per Se*)

103.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

104.    California recognizes the applicability of negligence *per se* in a broad range of scenarios, including a violation of federal law.  *Coleman v. Medtronic*, 2014 WL 286096 (Cal.App. 2 Dist.).

105.    There is no doubt in California that a federal statute or regulation may be adopted as a standard of care.  *Id.*

106.    The primary limitation on the applicability of negligence *per se* is that the injury must result from an occurrence of the nature which the regulation was designed to prevent and the person suffering the injury was a member of the class of persons for whose protection the regulation was adopted.  *Id* (citing Evid. Code. § 669, subds. (a)(3) & (4)).

107.    Here, FDA regulations and approval process of medical devices are designed to limit the risk inherent in medical devices, and as a recipient of one of

those devices, Plaintiff is in the class of persons the regulations are meant to protect.

108.   As stated above, Defendant breached FDA regulations by illegally selling the non FDA approved NuBone.  It continued its tortious conduct even after receiving letters, warnings, and demands from the FDA to stop its illegal sales.

109.   The proximate result of the Defendant's breach of FDA regulation and illegal sale of NuBone is that the Plaintiff became implanted with a non FDA approved product.

110.   As a result, the Plaintiff has suffered damages.

**COUNT VI**

**(Breach of Contract)**

111.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

112.   Globus sold NuBone™ without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act.  In so doing, they sold a product that could not be legally sold for use in spinal surgeries.  When Defendant sold NuBone to hospitals including Hoag Memorial they entered into a contract to provide a product that could be legally used for these surgeries.

113.   Plaintiff was an intended third party beneficiary of the contract between Globus and Hoag Memorial.  By statute, Cal. Civ. Code § 1559, a third party beneficiary may enforce a contract made expressly for his benefit.  *Id*.  A contract made expressly for a third party's benefit need not specifically name the party as the beneficiary; to be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit from the contract.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig*., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010)(citing *Gilbert Financial Corp. v. Steelform Contracting Co*., 82 Cal. App.3d 65, 69, 145 Cal.Rptr. 448 (1978)).

114.   Pursuant to the contract between Hoag Memorial and Defendant, after receiving a completed DO providing the details of Plaintiff's surgery, Defendant sent an invoice to Hoag Memorial and received payment for the specific NuBone™ used in Plaintiff's March 18, 2009 spinal surgery.

115.   However, Defendant breached its contract when it sold a product that could not legally be sold and used in Plaintiff's surgery.

116.   Plaintiff would not have purchased, nor allowed himself to be implanted with NuBone™ had he known that the product was illegal.

117.   As a result of Defendant's breach, Plaintiff has suffered damages.

## COUNT VII

## (Breach of Implied Contract)

118.   Plaintiff re-alleges and incorporates by reference all of the above allegations set forth in the Complaint as if fully set forth herein.  This claim is brought on behalf of Plaintiff and the Class against Defendant

119.   As alleged herein, Globus sold NuBone™ to hospitals including Hoag Memorial without appropriate pre-market approval, in violation of the Federal Food, Drug, and Cosmetic Act.  When purchasing NuBone™ that was manufactured, marketed, sold and/or distributed by Defendant, hospitals entered into implied contracts with Globus such that they would receive a product for the benefit of their patients, including Plaintiff, that was legally sold for use in spinal implant surgeries.

120.   Plaintiff is an intended third party beneficiary of the contract between Globus and Hoag Memorial.  By statute, Cal. Civ. Code **§** 1559, a third party beneficiary may enforce a contract made expressly for his benefit.  *Id*.  A contract made expressly for a third party's benefit need not specifically name the party as the beneficiary; to be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit from the contract.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,

SECOND AMENDED COMPLAINT

754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010)(citing *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App.3d 65, 69, 145 Cal.Rptr. 448 (1978)).

121.   By virtue of Defendant's conduct, Globus had a fiduciary duty not to sell a product that could not be legally sold for use in spinal surgeries.

122.   As result of Globus selling a non-FDA approved product that could not be legally sold for use in spinal surgeries, Defendant has breached its implied contract to deliver a product that could be used in Plaintiff's spinal surgery.

123.   Plaintiff would not have purchased, nor allowed himself to be implanted with NuBone™ had he known that the product was illegal.

124.   Globus breached the implied contract.   As a result of said breach, Plaintiff and the Class have suffered damages.

## COUNT VIII

## (Breach of Implied Warranty Cal. Com. Code § 2314)

125.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

126.   Plaintiff brings a claim for breach of implied warranty pursuant to Cal. Com. Code § 2314, which sets forth the implied warranty of merchantability:

> A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind… Goods to be merchantable must be … fit for the ordinary  purposes for which such goods are used.

*Id*. at § 2314(2)(c).

127.   Defendant is a "merchant" of NuBone™ as defined in the statute. Globus manufactured, sold, and distributed NuBone™ to hospitals in the State of California.

128.   Plaintiff is a third party beneficiary of the contract whereby Defendant sold Hoag Memorial NuBone™ for his benefit and to be used during his surgery and is able to enforce the warranty.

- 24 -

129.   By statute, Cal. Civ. Code **§** 1559, a third party beneficiary may enforce a contract made expressly for his benefit.  *Id*.  A contract made expressly for a third party's benefit need not specifically name the party as the beneficiary; to be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit from the contract.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig*., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010)(citing *Gilbert Financial Corp. v. Steelform Contracting Co*., 82 Cal. App.3d 65, 69, 145 Cal.Rptr. 448 (1978)).

130.   Defendant breached the implied warranty of merchantability when it sold NuBone™ that was not merchantable at the time of its sale or fit for the ordinary purpose for which it was to be used, namely in spinal surgeries.

131.   Defendant breached the implied warranty of merchantability because, as a result of not being FDA approved, NuBone™ could not legally be sold for use in spinal surgeries.

132.   Because it was illegal to sell,  NuBone™ was neither a merchantable product, nor fit for its ordinary purpose.

133.   As NuBone™ was not FDA approved, the product had not been determined to be safe and effective for use in spinal surgeries.  Therefore, NuBone™ was neither merchantable nor fit for its ordinary purpose.

134.   As a result of Defendant's breach of its implied warranty, Plaintiff has suffered damages.

## COUNT VIIII

### (Fraudulent Concealment)

135.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

136.   To state a claim for fraudulent concealment under California law, a plaintiff must allege:

(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage.

*Id.* (citing *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1267 (C.D.Cal.2007) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004)).

137.    The concealment is actionable when the defendant had a duty to disclose the concealed fact.

138.    A plaintiff may demonstrate a duty to disclose in four circumstances:

(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*Id.* at 1267-1268 (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (Cal.Ct.App.1997)).

139.    Defendant misrepresented and concealed that NuBone™ was not FDA approved and illegal to be sold for use in spinal surgeries.

140.    Defendant knew, misrepresented and concealed the status of NuBone™ after being specifically informed by the FDA.

141.    Defendant misrepresented and concealed the non-FDA approved status of NuBone™ to induce the purchase of NuBone for use in Plaintiff's surgery.  It did so because it knew that no one would purchase NuBone™ if it had not received FDA approval because itor could not be legally sold.

142.    Defendant had an obligation to disclose the non-FDA approved status of NuBone™ because it owed a fiduciary duty to plaintiff, had exclusive knowledge that NuBone™ was not FDA approved, actively concealed the letters, warnings, and demands from the FDA, and made partial representations in its press releases, DOs, packaging, and labels.

143.   As a result of Defendant's fraudulent concealment, Plaintiff has suffered damage.

## **RELIEF**

WHERFORE, Plaintiff demands judgment against Defendant and requests the following relief:

A.   that this Court certifies the proposed Class;

B.   that this Court certifies Plaintiff as class representatives on behalf of the Class;

C.   that this Court award Plaintiff, on behalf of himself and all those similarly situated, actual damages, punitive damages, and attorney's fees and costs pursuant to Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

D.   That this Court award Plaintiff, on behalf of him and all those similarly situated, judgment against Defendant, in such sums as shall be determined, for restitution of money paid to the Defendant pursuant to Bus. & Prof. Code § 17203.

E.   That this Court award Plaintiff, on behalf of himself and all those similarly situated, judgment against Defendant, in such sums as shall be determined to fully and fairly compensate them for their economic damages incurred as a direct and proximate result of purchasing the Defendant's NuBone™ products;

F.   That this courtCourt award Plaintiff damages, on behalf of himself and all those similarly situated, judgment against Defendant, in such sums as to fairly compensate them for their damages as a result of Defendant's negligence;

G.   That this Court award Plaintiff damages, on behalf of himself and all those similarly situated, judgment against Defendant, in such sums as to fairly compensate them for their damages as a result of Defendant's breach of implied contract;

H.    That this courtCourt award Plaintiff damages, on behalf of himself and all those similarly situated, judgment against Defendant, in such sums as to fairly compensate them for their damages as a result of Defendant's breach of contract;

I.    That this courtCourt award Plaintiff damages, on behalf of himself and all those similarly situated, judgment against Defendant, in such sums as to fairly compensate them for their damages as a result of Defendant's fraudulent concealment;

J.    That this Court award Plaintiff, and all those similarly situated, the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served;

K.    That this Court award the Plaintiff, and all those similarly situated, their respective costs, disbursements, and reasonable attorneys' fees incurred; and

L.    That this Court award such other and further relief as it deems necessary, just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 12, 2013              BRODSKY & SMITH, LLC

By: _____
Evan J. Smith (SBN242352)
Jason L. Brodsky (*pro hac vice* to be filed)
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone:  (877) 534-2590
Facsimile:  (310) 247-0160

*Attorneys for Plaintiff*

- 28 -

SECOND AMENDED COMPLAINT

EXHIBIT "A"

LAW OFFICES

# BRODSKY & SMITH, LLC

TWO BALA PLAZA, SUITE 602
BALA CYNWYD, PA 19004

610.667.6200
FAX 610.667.9029
WWW.BRODSKY-SMITH.COM

| NEW YORK OFFICE | CALIFORNIA OFFICE | NEW JERSEY OFFICE |
|---|---|---|
| 240 MINEOLA BOULEVARD | 9595 WILSHIRE BLVD., SUITE 900 | 1040 KINGS HIGHWAY NORTH, SUITE 601 |
| MINEOLA, NY 11501 | BEVERLY HILLS, CA 90212 | CHERRY HILL, NJ 08034 |
| 516.741.4977 | 310.300.8425 | 856.795.7250 |

April 19, 2013

VIA CERTIFIED MAIL

Globus Medical, Inc.
2560 General Armstead Avenue
Audubon, Pennsylvania 19403

Dear Globus Medical,

This office represents Eugene A. DeBons who was implanted with NuBone DBM Putty at Hoag Memorial Hospital Presbyterian located at 1 Hoag Drive, Newport Beach CA 92663. Please accept this correspondence as notice pursuant to the Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code Section 1770 and other applicable California law. When Mr. DeBons was implanted with NuBone, he was unaware that the NuBone™ Osteoinductive Bone Graft product line had not received proper premarket approval or clearance as required by law. Had he been so aware, he would not have had this product implanted into him. Likewise, NuBone was implanted into other patients in the state of California. As you are aware, it was illegal to market, sell and/or distribute NuBone prior to receiving FDA approval. As a result, you have violated Section 1770 of the CLRA and state law.

We hereby demand that you and/or Globus Medical, Inc. ("Globus Medical") rectify this wrong by refunding any and all monies you and/or Globus Medical received as a result of sales in the state of California. In addition, we hereby demand that you and/or Globus Medical agree to pay any and/all costs associated with the removal of NuBone from those California patients that were implanted with NuBone.

We are willing to discuss with you the aforementioned demand so as to rectify the illegal sale of the non-FDA approved product. If you have any questions, please feel free to contact me.

Respectfully,

Jason Brodsky

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

O F F I C I A L   U S E

7001 0360 0004 7233 4754

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.11 |

Postmark
Here
BALA CYNWYD PA 19004-9998
19 2013
USPS

Sent To
*Globus Medical, Inc.*

Street, Apt. No.; or PO Box No.
*2560 General Armstead Ave*

City, State, ZIP+4
*Audubon PA 19403*

PS Form 3800, January 2001                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Globus Medical, Inc.
2560 General Armstead Ave
Audubon, PA  19403*

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery  4/22

C. Signature

X _____    ☒ Agent
                          ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)    7001 0360 0004 7233 4754

PS Form 3811, July 1999        Domestic Return Receipt        102595-00-M-0952

LAW OFFICES

# BRODSKY & SMITH, LLC

TWO BALA PLAZA, SUITE 602
BALA CYNWYD, PA 19004

610.667.6200
FAX 610.667.9029
WWW.BRODSKY-SMITH.COM

NEW YORK OFFICE
240 MINEOLA BOULEVARD
MINEOLA, NY 11501
516.741.4977

CALIFORNIA OFFICE
9595 WILSHIRE BLVD., SUITE 900
BEVERLY HILLS, CA 90212
310.300.8425

NEW JERSEY OFFICE
1040 KINGS HIGHWAY NORTH, SUITE 601
CHERRY HILL, NJ 08034
856.795.7250

April 19, 2013

**VIA CERTIFIED MAIL**

Corporation Service Company
Globus Medical, Inc.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Dear Globus Medical,

This office represents Eugene A. DeBons who was implanted with NuBone DBM Putty at Hoag Memorial Hospital Presbyterian located at 1 Hoag Drive, Newport Beach CA 92663. Please accept this correspondence as notice pursuant to the Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code Section 1770 and other applicable California law. When Mr. DeBons was implanted with NuBone, he was unaware that the NuBone™ Osteoinductive Bone Graft product line had not received proper premarket approval or clearance as required by law. Had he been so aware, he would not have had this product implanted into him. Likewise, NuBone was implanted into other patients in the state of California. As you are aware, it was illegal to market, sell and/or distribute NuBone prior to receiving FDA approval. As a result, you have violated Section 1770 of the CLRA and state law.

We hereby demand that you and/or Globus Medical, Inc. ("Globus Medical") rectify this wrong by refunding any and all monies you and/or Globus Medical received as a result of sales in the state of California. In addition, we hereby demand that you and/or Globus Medical agree to pay any and/all costs associated with the removal of NuBone from those California patients that were implanted with NuBone.

We are willing to discuss with you the aforementioned demand so as to rectify the illegal sale of the non-FDA approved product. If you have any questions, please feel free to contact me.

Respectfully,

Jason Brodsky

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Corporation Service Co.
Globus Medical, Inc
2710 Gateway Oaks Drive
Ste 150 N
Sacramento, CA 95833

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
APR 2 2 2013

C. Signature
xitrisha Ward
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)

7001 0360 0004 7233 4747

PS Form 3811, July 1999   Domestic Return Receipt   102595-00-M-0952



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | .46 |
| Certified Fee | | 3.10 |
| Return Receipt Fee (Endorsement Required) | | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.11 |

BALACYNWYD, PA
APR 19 2013
USPS
19996-9998

Sent To  Corp. Service Co.            Ste.
Street, Apt. No.;  2710 Gateway Oaks Dr  150 N
or PO Box No.
City, State, ZIP+4  Sacramento CA 95833

PS Form 3800, January 2001   See Reverse for Instructions

7001 0360 0004 7233 4747

LAW OFFICES
# BRODSKY & SMITH, LLC

TWO BALA PLAZA, SUITE 602
BALA CYNWYD, PA 19004

610.667.6200
FAX 610.667.9029
WWW.BRODSKY-SMITH.COM

| NEW YORK OFFICE | CALIFORNIA OFFICE | NEW JERSEY OFFICE |
|---|---|---|
| 240 MINEOLA BOULEVARD | 9595 WILSHIRE BLVD., SUITE 900 | 1040 KINGS HIGHWAY NORTH, SUITE 601 |
| MINEOLA, NY 11501 | BEVERLY HILLS, CA 90212 | CHERRY HILL, NJ 08034 |
| 516.741.4977 | 310.300.8425 | 856.795.7250 |

April 19, 2013

VIA CERTIFIED MAIL

David C. Paul, CEO Globus Medical, Inc.
Globus Medical, Inc.
2560 General Armstead Avenue
Audubon, Pennsylvania 19403

Dear Mr. Paul,

This office represents Eugene A. DeBons who was implanted with NuBone DBM Putty at Hoag Memorial Hospital Presbyterian located at 1 Hoag Drive, Newport Beach CA 92663. Please accept this correspondence as notice pursuant to the Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code Section 1770 and other applicable California law. When Mr. DeBons was implanted with NuBone, he was unaware that the NuBone™ Osteoinductive Bone Graft product line had not received proper premarket approval or clearance as required by law. Had he been so aware, he would not have had this product implanted into him. Likewise, NuBone was implanted into other patients in the state of California. As you are aware, it was illegal to market, sell and/or distribute NuBone prior to receiving FDA approval. As a result, you have violated Section 1770 of the CLRA and state law.

We hereby demand that you and/or Globus Medical, Inc. ("Globus Medical") rectify this wrong by refunding any and all monies you and/or Globus Medical received as a result of sales in the state of California. In addition, we hereby demand that you and/or Globus Medical agree to pay any and all costs associated with the removal of NuBone from those California patients that were implanted with NuBone.

We are willing to discuss with you the aforementioned demand so as to rectify the illegal sale of the non-FDA approved product. If you have any questions, please feel free to contact me.

Respectfully,

Jason Brodsky

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | .46 |
| Certified Fee | | 3.10 |
| Return Receipt Fee (Endorsement Required) | | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.11 |

Postmark Here

BALACYNWYD, PA 19004-9998

Sent To
David C Paul CEO
Street, Apt. No.; Globus Medical Inc
or PO Box No. 2560 Gen Armstead Ave
City, State, ZIP+4 Audubon PA 19403

7001 0360 0004 7233 4761

PS Form 3800, January 2001          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

David C. Paul CEO
Globus Medical Inc.
560 General Armstead Ave
Audubon, PA 19403

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
Siobhan Bedford          4/22

C. Signature
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)

7001 0360 0004 7233 4761

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-0952

LAW OFFICES

# BRODSKY & SMITH, LLC

TWO BALA PLAZA, SUITE 602
BALA CYNWYD, PA 19004

610.667.6200
FAX 610.667.9029
WWW.BRODSKY-SMITH.COM

| NEW YORK OFFICE | CALIFORNIA OFFICE | NEW JERSEY OFFICE |
|---|---|---|
| 240 MINEOLA BOULEVARD | 9595 WILSHIRE BLVD., SUITE 900 | 1040 KINGS HIGHWAY NORTH, SUITE 601 |
| MINEOLA, NY 11501 | BEVERLY HILLS, CA 90212 | CHERRY HILL, NJ 08034 |
| 516.741.4977 | 310.300.8425 | 856.795.7250 |

April 19, 2013

VIA CERTIFIED MAIL

Corporation Service Company
David C. Paul, CEO Globus Medical, Inc.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Dear Mr. Paul,

This office represents Eugene A. DeBons who was implanted with NuBone DBM Putty at Hoag Memorial Hospital Presbyterian located at 1 Hoag Drive, Newport Beach CA 92663. Please accept this correspondence as notice pursuant to the Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code Section 1770 and other applicable California law. When Mr. DeBons was implanted with NuBone, he was unaware that the NuBone™ Osteoinductive Bone Graft product line had not received proper premarket approval or clearance as required by law. Had he been so aware, he would not have had this product implanted into him. Likewise, NuBone was implanted into other patients in the state of California. As you are aware, it was illegal to market, sell and/or distribute NuBone prior to receiving FDA approval. As a result, you have violated Section 1770 of the CLRA and state law.

We hereby demand that you and/or Globus Medical, Inc. ("Globus Medical") rectify this wrong by refunding any and all monies you and/or Globus Medical received as a result of sales in the state of California. In addition, we hereby demand that you and/or Globus Medical agree to pay any and all costs associated with the removal of NuBone from those California patients that were implanted with NuBone.

We are willing to discuss with you the aforementioned demand so as to rectify the illegal sale of the non-FDA approved product. If you have any questions, please feel free to contact me.

Respectfully,

Jason Brodsky

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.11 |

Sent To Corp. Service Co. Paul CEO
Street, Apt. No.; David C. Globus Medical Drive
or PO Box No. 2710 Gateway Oaks Drive
City, State, ZIP+4 Sacramento, CA 95833

PS Form 3800, January 2001          See Reverse for Instructions

7001 0360 0004 7233 4686

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Corporation Service Co.,
David C. Paul, CEO
Globus Medical, Inc.,
2710 Gateway Oaks Drive
Suite 150N
Sacramento, CA 95833

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery APR 2 2 2013

C. Signature
Arisha Wc      ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered      ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)

7001 0360 0004 7233 4686

PS Form 3811, July 1999        Domestic Return Receipt        102595-00-M-0952

Jun 01 13 12:58p                                                     p.1

1  Evan J. Smith, Esquire (SBN 242352)
   BRODSKY & SMITH, LLC
2  9595 Wilshire Blvd., Ste. 900
   Beverly Hills, CA 90212
3  Telephone:  (877) 534-2590
   Facsimile:   (310) 247-0160
4
   *Attorneys for Eugene A. DeBons*
5

6

7
                    SUPERIOR COURT OF CALIFORNIA
8
                         LOS ANGELES COUNTY
9

10

11
   EUGENE A. DeBONS, on behalf of          CASE NO.:
12 himself and all others similarly situated,
                                           JUDGE
13                 Plaintiff,
                                           DEPT.:
14          ˙ vs.

15 GLOBUS MEDICAL, INC.                    CLASS ACTION COMPLAINT FOR:
                                           PLAINTIFF DeBONS AFFIDAVIT
16                 Defendant.              PURSUANT TO CLRA CAL. CIV. CODE §
                                           1780(c).
17

18
   COUNTY OF MARICOPA           :
19                              : ss
   STATE OF ARIZONA             :
20

21      I, Eugene DeBons, being deposed, hereby states and affirms as follows:

22      1.     I am the named Plaintiff in the above captioned action and am filing this affidavit

23 concurrently with the filing of the Complaint which includes a cause of action under the

24 California Consumers' Legal Remedies Act pursuant to Cal. Civ. Code § 1780(c).

25      2.     Defendant Globus Medical, Inc. does business in Los Angeles County including,

26 but not limited to Cedars Sinai Medical Center in Los Angeles, CA.

27

28

                                         - 1 -
   PLAINTIFF DeBONS' AFFIDAVIT PURSUANT TO CLRA CAL. CIV. CODE § 1780(c).

Jun 01 13 12:58p                                                    P.2

1       3.      This action has been commenced in the Superior Court for Los Angeles County,

2   California, where Globus Medical, Inc. does business, and therefore I believe to be a proper

3   place for trial of the action.

4   Dated: 6, 1    , 2013              By: _____

5                                           EUGENE A. DeBONS

6   Sworn and subscribed
    Before me this __ day
7   of _____, 2013

8

9   Please See Attached
10  Notary

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 2 -
    PLAINTIFF DeBONS' AFFIDAVIT PURSUANT TO CLRA CAL. CIV. CODE § 1780(c).

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

1
2
3
4
5
6

_____           _____
Signature of Document Signer No. 1            Signature of Document Signer No. 2 (if any)

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me

on this 1st day of June, 2013,
          Date          Month        Year

by

(1) Eugene A. Debons,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (/)

                    (and

(2) _____,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
                    Signature of Notary Public

STACY V. SANCHEZ
Commission # 1965682
Notary Public - California
Los Angeles County
My Comm. Expires Jan 28, 2016

Place Notary Seal Above

--- **OPTIONAL** ---

*Though the information below is not required by law, it may prove valuable
to persons relying on the document and could prevent fraudulent removal
and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Class Action Complaint

Document Date: 6/1/13         Number of Pages: 2

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                    Item #5910